# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7084 | **DATE** | 11/19/2001 |
| **CASE TITLE** | Sears, Roebuck And Co. vs. Royal Surplus Lines Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Royal's motion for summary judgment (15-1) is granted, while Sears' motion for summary judgment (18-1) is denied. Judgment is entered in favor of Royal Surplus Lines Insurance Company and against Sears, Roebuck And Co.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| ETV | courtroom deputy's initials |

number of notices: 2
date docketed: NOV 20 2001
docketing deputy initials
date mailed notice: 11/19/2001
mailing deputy initials: ETV

Date/time received in central Clerk's Office

Document Number: 31

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SEARS, ROEBUCK AND CO., a )
New York Corporation, )
)
      Plaintiff, )
)
    v. )
)
ROYAL SURPLUS LINES INSURANCE )
COMPANY, )
)
      Defendant. )
_____)   No. 00 C 7084
)
ROYAL SURPLUS LINES INSURANCE )   Judge Rebecca R. Pallmeyer
COMPANY, )
)
      Counter-Plaintiff, )
)
    v. )
)
SEARS, ROEBUCK AND CO., a )
New York Corporation, )
)
      Counter-Defendant. )

DOCKETED
NOV 20 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Sears, Roebuck and Co. ("Sears") seeks a declaration that Defendant Royal Surplus Lines Insurance Company ("Royal" or "Insurer") is required to indemnify Sears for losses and attorneys' fees incurred by Sears in a negligence action. Sears purchased bicycles from Roadmaster Industries, Inc. ("Roadmaster") under a contract that required Roadmaster to indemnify Sears for losses arising out of bicycle-related injuries and to obtain an insurance policy that included Sears as an additional insured. Roadmaster initially did obtain insurance from Royal that listed Sears as an additional insured, but later negotiated coverage under a

different policy which did not list Sears as an additional insured. Roadmaster went bankrupt prior to this litigation.

In the underlying action, Joseph Battaglieri, who was injured while using a Roadmaster bicycle purchased at Sears, sued Sears for negligence, strict products liability, and breach of warranties. Sears settled the case and Royal contributed half of the settlement, with both parties reserving their rights to seek a judicial determination of Royal's obligation to pay the full amount. Each party now moves for summary judgment. For the reasons set forth below, Royal's motion for summary judgment is granted and Sears' motion for summary judgment is denied.

## FACTUAL BACKGROUND

### A. The Parties

Sears is a New York corporation with its principal place of business in Hoffman Estates, Illinois. (Pl's Compl. ¶ 1.) Royal is a Connecticut corporation with its principal place of business in North Carolina, licensed to underwrite insurance in Illinois at the relevant time. (Royal's Rule 12(M) Statement ("Royal 12M") ¶ 1.) Roadmaster is a Delaware corporation with its principal place of business in Illinois. On August 27, 1997, Roadmaster filed for Chapter 11 bankruptcy with the United States Bankruptcy Court for the Northern District of Georgia, Case No. 97-12788. (Royal Mem. Supp. Sum. J. ("Royal Memo") at 3; SEC 10Q Report on RDM Sports Group at 11, Ex. G to Royal Memo.) This court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds seventy-five thousand dollars.

## B. The Purchase Agreement between Roadmaster and Sears

In January 1996, Sears and Roadmaster entered into a contract for the purchase of bicycles, including the bicycle at issue in the Battaglieri suit. The contract contained an indemnity provision, which stated:

> Seller agrees to protect, defend, hold harmless and indemnify Purchaser . . . against any and all claims, actions, liabilities, losses, costs and expenses (including attorneys' fees) . . . (2) arising out of any actual or alleged death of or injury to any person, damage to any property or any other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in such merchandise . . . including actual or alleged improper construction and/or design . . . (Letter of Agreement between Sears and Roadmaster, Ex. E. to Sears' Local Rule 56.1 Statement ("Sears 56.1").)

The contract also obligated Roadmaster to obtain and maintain a product liability insurance policy at Roadmaster's expense and to notify Sears in writing thirty days before any termination of the coverage. (*Id.*)

## C. The Insurance Policies

In January 1997, Royal issued a Commercial General Liability Insurance policy to Roadmaster, designated policy number KHA010968 ("Policy 968"). (Royal Policy KHA010968, Ex. F to Sears 56.1.) The policy extended coverage to Sears by listing as an additional insured "[a]ny person or organization to whom or to which you [Roadmaster] are obligated by an 'insured contract' to provide insurance such as is provided by this policy." (*Id.* at Endorsement 5; Sears 56.1 ¶ 12.) The additional insured clause was limited by a separate endorsement which stated that the insurance coverage did not apply to bodily injuries arising out of the

3

"installation, servicing or repair" of the product. (Sears 56.1 at ¶ 13; Ex. F to Sears 56.1 at Endorsement No. 8.)

At some later point in 1997 and at Roadmaster's request, Royal moved insurance coverage for certain Roadmaster products, including the bicycles in question, to another pre-existing policy, designated policy number KHA010639 ("Policy 639"), that covered the period from September 1996 to September 2001.[1] (Royal's Mem. in Opposition to Sears' Sum. J. at 7; Sears 56.1 at ¶ 14; Policy 639, Ex. G to Sears 56.1.) An additional endorsement in Policy 968 stated that it no longer afforded coverage for products mentioned by Policy 639. (Sears 56.1 ¶ 14; Ex. F to Sears 56.1 at Endorsement No. 9.) Notably, Policy 639 did not include Sears as an additional insured. (Sears 56.1 ¶ 14.)

Sears alleges that Roadmaster violated its agreement with Sears by failing to provide Sears with coverage. (Sears 56.1 at ¶ 16.) Royal asserts that Roadmaster never requested that Sears be added as an additional insured on Policy 639 and that endorsements of this nature are not typically provided to an insured unless the insured specifically asks for it. (Royal Supplemental Ans. to Sears' First Interrogs., ¶ 5.) After Battaglieri filed his claim, Royal stated in an April 27, 2000 letter to Sears' attorneys that "the claim of Joseph Battaglieri is potentially covered under [Policy 639] and not [Policy 698]. [Policy 698] includes a cross liability

---

[1] It is not clear from the record when this change in coverage occurred. The "Cross Exclusion" Endorsement providing that bicycle-related injuries were covered by Policy 639 and not Policy 968 declared itself to be effective as of January 1, 1997. (Ex. F to Sears 56.1 at Endorsement No. 9.)

4

endorsement, # 9, which excludes coverage for products covered by . . . [Policy 639]." (Letter from Royal to Sears' Counsel, Ex. I to Sears 56.1.)

D. The Battaglieri Claim

On August 3, 1998, Joseph Battaglieri filed a complaint against Sears and other defendants in the Contra Costa County California Superior Court (Case No. C99 02778). (Royal 12M ¶ 9; Battaglieri Complaint, Ex. B to Royal Motion for Summary Judgment.) Roadmaster was not named as a defendant in either this complaint nor in an amended complaint filed on July 22, 1999. (Royal 12M ¶ 10; Amended Battaglieri Complaint, Ex. C to Royal Motion for Summary Judgment.) Battaglieri alleged that on August 7, 1997, he was injured while riding a Roadmaster bicycle he had purchased from Sears in October 1996. (Ex. B to Royal Motion for Summary Judgment at 2-4.) According to the complaint, Battaglieri suffered injuries to his head and neck after he rode over a speed bump and the bicycle's front forks and front wheel separated, causing him to hit the ground. (*Id.*)

By the time Battaglieri filed his complaint, Roadmaster had already declared bankruptcy. Thus any claims against it were barred or automatically stayed. (Sears 56.1 at ¶ 21.) This not only limited Battaglieri's choice of defendants, but also foreclosed any opportunity for Sears to seek recovery against Roadmaster for breach of contract or failure to indemnify. (*Id.*) Sears did request that Royal indemnify Sears for any liability stemming from the Battaglieri suit, alleging that Royal had a responsibility for Sears' liability stemming from the indemnity agreement between Sears and Roadmaster. (Royal 12M at ¶¶ 14,15.) Royal advised Sears in April of

5

2000 that it was possible there would be no coverage under the Roadmaster policy because Sears was not listed as an additional insured. (Ex. H to Royal Motion for Summary Judgment at 2-4.) Royal nevertheless participated in the mediation of the Battaglieri lawsuit, reserving its right to seek a judicial determination of its liability. (*Id.* at 1; Sears 56.1 at ¶ 22.) On June 7, 2000, the parties agreed to a settlement with Battaglieri for the amount of $650,000, which released Sears and Roadmaster from any future claims. (Royal 12M at ¶ 22; Sears 56.1 ¶ 23; 6/27/00 Letter from Royal's Counsel to Sears, Ex. M to Sears 56.1.) Sears and Royal each agreed to pay $325,000, subject to the condition that the two parties would later resolve their dispute over whether Policy 639 covered the settlement. (Royal 12M at ¶ 23.)

On November 9, 2000, Sears filed this action for a declaratory judgment that Royal was responsible for Sears' losses and attorneys' fees from the Battaglieri settlement because Sears was covered under Policy 639. (Sears Compl. at ¶ 35.) Sears also alleged that Royal breached the Roadmaster/Royal insurance contract to which Sears was a third party beneficiary. (*Id.* at ¶¶ 37-39.) On July 24, 2001 Sears filed a summary judgment motion arguing both that insurance coverage existed under Policy 639 and that Royal had "surreptitiously attempted to defeat Sears's rights as a third-party beneficiary." (Sears' Mem. Supp. Sum. J. ("Sears Memo") at 4,6.)

Royal denies that it had any responsibility to insure Sears. In response to Sears' complaint, Royal filed a counterclaim seeking a judgment that it had no

liability under Policy 639 to pay for losses or attorneys' fees that Sears incurred from the Battaglieri claim. (Royal's Ans. & Countercl. for Decl. J. at ¶ 35.) It also seeks reimbursement of the $325,000 it contributed to the settlement. (*Id.*) On July 24, 2001, Royal filed its own summary judgment motion, arguing that Royal is not liable for Sears's losses because Sears is not a named insured under the Royal insurance policy. (Royal Memo at 1.)

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 676-77 (7th Cir. 2001). The party seeking summary judgment carries the initial burden of showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). *See also Celotex*, 477 U.S. at 324.

When presented with cross-motions for summary judgment, the court considers the motions simultaneously and draws all reasonable inferences in favor of the party opposing a particular motion. *Buttitta v. City of Chicago*, 803 F. Supp. 213, 217 (N.D. Ill. 1992), *aff'd*, 9 F.3d 1198 (7th Cir. 1993). This "Janus-like perspective" can result in the denial of both motions if material facts are disputed.

7

*Id.* In general, however, the interpretation of an insurance policy is a "question of law that is an appropriate subject for disposition by way of summary judgment." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). *See also Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, – F.3d –, No 00-4189, 2001 WL 1352252, at *4 (7th Cir. Nov. 5, 2001) ("interpretation of an unambiguous contract is a question of law").

B.  **The underlying claim**[2]

The cross-motions for summary judgment hinge on the issue of whether Sears is actually an insured under the Royal policy. An insurer is only required to

---

[2]   Although neither party raises the issue, the court must still determine what law applies to the case. In general, a federal court exercising diversity jurisdiction must apply the law of the forum state. *See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1122 (7th Cir. 1998). Because the case was filed in Illinois, that state's choice of law rules govern. *Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101, 102 (7th Cir. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Illinois' rules for selecting a body of law in the absence of a choice of law clause are somewhat complex, however. *See Zurich Ins. Co. v. Sunclipse, Inc.*, 85 F. Supp.2d 842, 849 (N.D. Ill. 2000). The Illinois Supreme Court has stated that insurance policy provisions can be governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or the insurer, or the location of the insured risk. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 526-27, 655 N.E.2d 842, 845 (1995).
The location of the subject matter and the location of the insured risk are not conclusive factors here because the record does not show where Battaglieri's bicycle was sold. It is clear, however, that the contract between Sears and Roadmaster was completed in Illinois and both parties to the insurance contract (Roadmaster and Royal) operate in Illinois. While some Illinois cases consider the location of the underlying suit as an indicator of law to be applied in an insurance dispute, it would seem odd in this case to apply California law when none of the parties have advocated such an outcome. *See Lapham-Hickey*, 166 Ill.2d at 527, 655 N.E.2d at 845 (relying on place of policy's delivery rather than location of insured risk where the insured property was located in six different states). Because both parties to this action do business in Illinois, have recognized the connection to Illinois in their motions, and filed the case in a federal court in Illinois, the court concludes that Illinois law is applicable.

indemnify organizations or individuals covered by the policy. *See Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App. 3d 590, 599, 741 N.E.2d 1039, 1045 (1st Dist. 2000). Royal asserts that Sears is not covered by any Royal policy. The court agrees.

There is no dispute that Sears was once covered under Policy 968. This policy included an "additional insured" provision that protected Sears, an organization to which Roadmaster was obligated by an "insured contract," namely the purchase agreement. Some time in 1999, however, Roadmaster switched the coverage for its bicycles to a different policy, Policy 639, and asked for a provision to be added to Policy 968 that eliminated any coverage for products covered by Policy 639. This amendment effectively eliminated any coverage for Sears, an apparent violation of the purchase agreement between Roadmaster and Sears.

Unfortunately for Sears, however, Roadmaster's obligations to it are not relevant to this dispute between Sears and Royal. The reasons for Roadmaster's actions are unknown, but there is no evidence to support Sears' allegation that Royal "in bad faith, surreptitiously attempted to defeat Sears' right as a third-party beneficiary." (Sears Memo at 4.) Roadmaster did not advise Sears of the switch in policies and thus denied Sears the opportunity to protect itself from liability, but there is no evidence that Royal did anything but follow the directions of the insured, Roadmaster.

Furthermore, Sears offers no authority for the notion that third-party beneficiary status continues once the third party is removed from the contract.

9

Sears does cite a law review article, which observes that courts are reluctant to allow parties to be left without coverage in the absence of cancellation notice since it deprives the party of the protection for which it bargained and the opportunity to obtain substitute coverage. *See* Mark Pomerantz, *Recognizing the Unique Status of Additional Named Insureds*, 53 Fordham L. Rev. 117, 139 (1984). This generalization does not necessarily support Sears' claim, however; courts may hesitate to *eliminate* coverage without summarily *extending* it to third party additional insureds that have been removed from the policy by the primary insured. In addition, the cases cited in the article are factually distinguishable from the case at hand because they pertain to insurance coverage for cars used by multiple drivers, cars owned by multiple owners, and employees who pay group policy health premiums without being named in insurance contract. *Id.* at 139 n.112. Finally, law review articles are not binding authority and the court cannot rely on them to make decisions without precedential support. *(See* Sears Memo at 5.) The mere fact that Roadmaster made a switch in its insurance policies at the same time it filed for bankruptcy does not support the conclusion that Royal convinced Roadmaster to surreptitiously switch policies for the purpose of eliminating Sears' coverage.

This court agrees with Royal that the Illinois Appellate court's decision in *Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App.3d 590, 741 N.E.2d 1039 (1st Dist. 2000), is persuasive authority in this case. In *Alliance Syndicate*, the insured entered into an agreement with a railroad to perform railroad yard work. *Id.* at 594, 741 N.E.2d at 1041. In the contract, the insured agreed to indemnify the

railroad for any loss or damages stemming from the work and to provide general liability insurance with the railroad named as an additional insured. *Id.* at 594, 741 N.E.2d at 1042. The insured acquired coverage, but failed to include the railroad as an additional insured. *Id.* at 595, 741 N.E.2d at 1042.

Later, when a rail yard worker was injured, the worker sued both the insured and the railroad. The insurer sought a declaratory judgment that it had no responsibility to reimburse the insured for the cost of the defense of the railroad, which was neither a named insured nor an additional insured under the policy. *Id.* at 597, 741 N.E.2d at 1044. The railroad counterclaimed, seeking a declaration that the work contract obliged the insured to indemnify the railroad. *Id.* at 596, 741 N.E.2d at 1043. In affirming the grant of summary judgment in favor of the insurer, the court agreed that where the railroad was not listed as an additional insured under the policy, the insurer's obligation to indemnify extended only to the named insured. *Id.* at 599, 741 N.E.2d at 1045.

Apart from the fact that Roadmaster, the named insured, is in bankruptcy, the situation here is nearly identical to the situation in *Alliance Syndicate*. For reasons not significant to the outcome, Sears was not listed as an additional insured on the policy obtained by Roadmaster. That policy requires Royal only to pay damages incurred by the insured and does not require Royal to cover the losses suffered by Sears. As in *Alliance Syndicate*, the extension of Royal's coverage to Sears, which was not listed as an additional insured under Policy 639, would unduly expand the scope of the original contract. Roadmaster's failure to add Sears

11

as an additional insured in violation of the original bicycle sales contract and its subsequent Chapter 11 filing leave Sears in a difficult position, but these events create no basis for a claim against Royal. Because Sears is not covered by the policy, there can be no breach of contract. Accordingly, there are no genuine material facts at issue.

## CONCLUSION

Royal's motion for summary judgment (No. 15-1) is granted, while Sears' motion for summary judgment (No. 18-1) is denied. Judgment is entered in favor of Royal and against Sears.

ENTER:

Dated: November 19, 2001

REBECCA R. PALLMEYER
United States District Judge